IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-40799
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MARSKA FLOYD MCDANIEL

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 1:06-CR-134-1

Before JOLLY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

A jury found Marska Floyd McDaniel guilty of violating 18 U.S.C. §
922(g)(1) by being a felon in possession of a firearm or ammunition affecting
interstate or foreign commerce. McDaniel appeals from his conviction. We
AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

In 1982, a Texas state jury convicted McDaniel of aggravated robbery. He received a thirty-five year sentence, but he was paroled before completing it. As of August 2006, McDaniel resided at 1500 Dewalt Avenue, Port Arthur, Texas. He managed a convenience store that his father and brother co-owned; the convenience store also was located in the building at 1500 Dewalt Avenue.

On August 22, 2006, McDaniel complained to the Port Arthur police that an ex-girlfriend and three other women had burglarized the convenience store at 1500 Dewalt Avenue and had assaulted him there. Officer Legnon of the Port Arthur Police Department responded to McDaniel's complaint. When Officer Legnon spoke with McDaniel about the complaint, McDaniel referred to having a gun in the store. McDaniel also indicated he would not hesitate to shoot the women if they returned and he needed to defend himself. Based on McDaniel's statements, the Port Arthur police initiated an investigation of McDaniel for being a felon in possession of a firearm.

The Port Arthur police asked the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to help with the investigation. ATF Special Agent Quo Mitchell interviewed the four women about whom McDaniel had complained. McDaniel's ex-girlfriend, Shilah Guidry, told Agent Mitchell that she had seen five firearms and a silencer at 1500 Dewalt Avenue approximately two months prior. Based on Guidry's statement and on McDaniel's earlier comment indicating that he had a gun in the convenience store, Agent Mitchell obtained a federal warrant to search 1500 Dewalt Avenue for firearms, ammunition, one or more silencers, and other items pertaining to the possession of firearms. The ATF also placed McDaniel's residence and Guidry's residence under surveillance.

On September 5, ATF agents stationed at Guidry's residence noticed a truck parked behind the residence that they believed belonged to McDaniel. The

truck was parked unlawfully, and the agents alerted the Port Arthur police to this fact in an attempt to draw McDaniel out of Guidry's residence. A police officer responded to the scene; and when he walked around the truck, McDaniel exited the residence.

The ATF agents approached the pair, and ATF Special Agent Bart Mora identified himself to McDaniel. Mora informed McDaniel that the ATF would be executing a search warrant at 1500 Dewalt Avenue and asked McDaniel for keys to the structure so that the ATF would not need to force entry. McDaniel supplied Mora with a set of roughly two dozen keys, and Mora placed McDaniel in handcuffs so that the ATF agents would not need to treat him as a potential threat to the agents' safety. Mora advised McDaniel he was not under arrest but nevertheless read McDaniel his Miranda rights. Mora asked McDaniel about the truck, and McDaniel told Mora he had purchased it. Mora asked whether anything was inside the truck with which Mora should be concerned, and McDaniel replied that a firearm was under the driver's side seat. Mora entered the vehicle and found a firearm where McDaniel said it would be. The firearm was in a cigar box, which also contained loose ammunition and some receipts that came from the convenience store at 1500 Dewalt Avenue.

Mora then asked whether there were any firearms at 1500 Dewalt Avenue. McDaniel responded that there were two: one gun under the convenience store's counter and a long gun in the area near the residence's water heater. The ATF agents, then considering McDaniel to be under arrest, transported him to 1500 Dewalt Street and searched the premises. They found a loaded Taurus, Model PT 99 (AF) nine-millimeter handgun under the convenience store's counter, and they also found a round of .38 Remington caliber ammunition on top of the counter. In the residence's water heater closet, they found a loaded .22 caliber semi-automatic Marlin long rifle. Additionally, ATF Special Agent Larry Sanders found a box of ammunition elsewhere in the residence. Throughout the

search of 1500 Dewalt Avenue, McDaniel informed ATF agents which of his roughly two dozen keys matched which lock the agents needed to open.

Special Agent Sanders later examined all of the firearms and ammunition that ATF agents found at 1500 Dewalt Avenue, and he determined no item was manufactured in Texas. The Government charged McDaniel with violating 18 U.S.C. § 922(g)(1) by being a felon in possession of a firearm or ammunition affecting interstate or foreign commerce. Before trial, the district court held an evidentiary hearing at which McDaniel sought to suppress the Government's evidence against him. The court denied McDaniel's motion to suppress, and a jury convicted him following a trial. McDaniel appeals from his conviction.

II.

McDaniel contends on appeal that the evidence was insufficient to support his conviction and that the district court erred in denying his motion for judgment of acquittal. He also contends that the district court erred in denying his motion to suppress evidence seized as a result of the search warrant because the affidavit supporting the warrant was insufficient. He argues further that the district court erred in denying his motion to suppress statements made to officers, on the basis that he did not voluntarily waive his Fifth Amendment right against self-incrimination.

III.

A.

We first consider McDaniel's claim that the search warrant that provided the basis for the seized firearms and ammunition was not supported by a sufficient affidavit. When reviewing a district court's denial of a motion to exclude evidence, we review the court's factual findings for clear error and its conclusions of law de novo. United States v. Pope, 467 F.3d 912, 915-16 (5th Cir. 2006).

A valid search warrant may be issued only upon a finding of probable cause. United States v. Brown, 941 F.2d 1300, 1302 (5th Cir. 1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. Id. Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. A magistrate's determination is entitled to deference by reviewing courts. Id. In addition, where officers obtained evidence in objectively reasonable good-faith reliance upon a search warrant, the evidence is admissible even if the affidavit on which the warrant was based was insufficient to establish probable cause. Pope, 467 F.3d at 916.

In this case, the district court held an evidentiary hearing to determine whether the affidavit supporting the search warrant was supported by sufficient evidence. The district court found that some of the statements supporting the affidavit turned out to be false: primarily those made by McDaniel's ex-girlfriend that he had five guns at the premises and an illegal silencer. The district court, however, also found that the affidavit was independently supported by a statement by a police officer that McDaniel had admitted to him, after being assaulted by the ex-girlfriend in his store, that McDaniel possessed a gun there and would use it. The district court found that this statement by McDaniel independently created the substantial basis necessary to conclude that a search warrant would uncover evidence of wrongdoing. McDaniel does not challenge this independent finding. There was sufficient evidence to support the search warrant of McDaniel's business and residence, and the district court did not err in denying McDaniel's motion to suppress evidence obtained as a result of the search.

B.

We next consider McDaniel's contention that his oral statements were admitted into evidence in violation of his rights against self-incrimination. He contends that he did not knowingly and voluntarily waive his Miranda rights.

The district court's determination regarding the validity of a defendant's waiver of his Miranda rights is a question of law reviewed de novo, but the court's factual findings underlying the determination are reviewed for clear error. United States v. Cardenas, 410 F.3d 287, 292 (5th Cir. 2005). The determination of whether a waiver is voluntarily made has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986). The Supreme Court has cautioned, however, that "[t]he sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion." Colorado v. Connelly, 479 U.S. 157, 170 (1986). Whether a waiver of the Fifth Amendment privilege is voluntary depends on "the absence of police overreaching, not on 'free choice' in any broader sense of the word." Id.

In this case, the district court determined that McDaniel voluntarily waived his rights to silence and to counsel, and that his statements, made after receiving Miranda warnings, were voluntary. The Government offered proof that McDaniel was read detailed statements of his rights to silence and to counsel and that he stated that he understood them. The evidence also indicated that McDaniel had received a Master's degree, and was able to understand the

warnings. Although McDaniel testified that he did not receive complete warnings, the district court's credibility determination was not clearly erroneous. The Government presented evidence that McDaniel heard and understood his constitutional rights and voluntarily waived them. Accordingly, the district court did not err in finding that McDaniel had knowingly and voluntarily waived his constitutional rights.

C.

Finally, we address McDaniel's argument that the evidence was insufficient to support his conviction. We review the district court's denial of a judgment of acquittal de novo. United States v. Williams, 520 F.3d 414, 420 (5th Cir. 2008). We will affirm if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc). The evidence and all reasonable inferences drawn from it are to be viewed on appeal in the light most favorable to the government. Id. "In addition, all credibility determinations are made in the light most favorable to the verdict." United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998).

To establish a violation of § 922(g)(1), the government has the burden to prove beyond a reasonable doubt: "(1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce." United States v. Guidry, 406 F.3d 314, 318 (5th Cir. 2005). Here, McDaniel contends that he did not possess the firearms or ammunition at issue.

Possession may be actual or constructive. United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998). "Actual possession means the defendant

knowingly has direct physical control over a thing at a given time. Constructive possession means ownership, dominion or control over a thing, or control over the premises where the thing is found." Id. (citations omitted). Possession may be shown through either direct or circumstantial evidence. Id. In a case when the premises where a firearm is found are jointly occupied, we have held that constructive possession may be found only where, in addition to dominion and control over the premises, there is "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993).

In this case, the Government presented evidence that ATF agents found an Iver Johnson .32 caliber revolver in McDaniel's truck. The Government also provided evidence that McDaniel had purchased the truck, that McDaniel supplied keys to the truck, that McDaniel told Special Agent Mora exactly where the firearm was inside the truck, and that McDaniel told Mora he had placed the firearm there. McDaniel constructively possessed the firearm and ammunition that ATF agents seized from McDaniel's truck.

The Government further introduced the following evidence: that McDaniel informed ATF agents they would find two guns at 1500 Dewalt Avenue, that McDaniel informed the agents one gun was under the convenience store's counter, and that McDaniel informed the agents a long gun was in the residence's water heater area. The Government entered evidence that ATF agents found a loaded Taurus, Model PT 99 (AF) nine-millimeter handgun under the convenience store's counter and a round of .38 Remington caliber ammunition on top of the counter, a loaded .22 caliber semi-automatic Marlin long rifle (a long gun) in the residence's water heater closet, and more ammunition elsewhere in the residence. Additionally, the Government entered evidence that McDaniel demonstrated dominion and control over the interior of the structure at 1500 Dewalt Avenue by informing ATF agents which of his

roughly two dozen keys matched which lock within the structure.[1] This evidence supports a plausible inference that McDaniel had knowledge of and access to the guns and ammunition that the ATF agents found at 1500 Dewalt Avenue; he constructively possessed these items.

IV.

For the foregoing reasons, McDaniel's conviction is

AFFIRMED.

---

[1] This evidence does not exhaust what the Government entered to prove McDaniel violated 18 U.S.C. § 922(g)(1). It is, however, sufficient evidence to support McDaniel's conviction. It is therefore unnecessary to discuss the rest of the Government's evidence against McDaniel.